Barry M. Aylstock, #028983
FAITH, LEDYARD & FAITH, PLC
919 North Dysart Road, Suite F
Avondale, Arizona 85323
Phone: (623) 932-0430
Fax: (623) 932-1610
Email: baylstock@faithlaw.com
*Attorneys for Plaintiff Penny L. Tivnan*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penny L. Tivnan, individually,<br><br>Plaintiff,<br><br>v.<br><br>ManpowerGroup US Inc., a Wisconsin corporation,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**<br><br>**(Jury Trial Demanded)** |

Plaintiff PENNY L. TIVNAN ("Plaintiff TIVNAN"), by and through undersigned counsel, alleges against Defendant as follows:

**JURISDICTION**

1. This action involves alleged violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e *et seq.*

**VENUE**

2. All claims asserted in this matter arose within the District of Arizona, and the alleged violations of Title VII and resulting damages occurred in the District of Arizona. Venue is proper pursuant to 28 U.S.C. § 1391, as well as 42 U.S.C. § 2000e *et seq*.

## PARTIES

3. Plaintiff TIVNAN at all times material hereto was a citizen of the State of Arizona, residing in Maricopa County, Arizona.

4. Defendant MANPOWERGROUP US INC. doing business as MANPOWERGROUP (referred to as "Defendant MANPOWER") is, and at all times material hereto was, a Wisconsin corporation, registered with the Arizona Corporation Commission, doing business in the District of Arizona, and having its principal place of business in Maricopa County, Arizona.

5. Defendants DOES 1-10 and ABC ENTITIES 1-10 are fictitious persons and/or entities that may be liable to Plaintiff TIVNAN but whose true names and identities are unknown at this time. Plaintiff TIVNAN will seek leave of court to amend the Complaint as they are discovered.

## INTRODUCTION

6. Plaintiff TIVNAN hereby incorporates by reference each of the foregoing allegations as if fully stated herein.

7. At all times material hereto, Plaintiff TIVNAN was an employee of Defendant MANPOWER, Defendant MANPOWER is a private-sector employer located in Maricopa County, and Defendant MANPOWER employs fifteen (15) or more employees.

8. Plaintiff TIVNAN was hired as a full-time employee by Defendant MANPOWER on approximately November 11, 2011.

9. At all times material hereto, Plaintiff TIVNAN was a covered employee under Title VII.

10. At all times material hereto, Defendant MANPOWER was a covered employer under Title VII.

11. Plaintiff TIVNAN's sex is female.

12. As an employee of Defendant MANPOWER, Plaintiff TIVNAN was placed in a position to perform her job duties at the Solana power plant ("Solana") located in Gila Bend, Arizona.

13. During her assignment to Solana by Defendant MANPOWER, Plaintiff TIVNAN was subjected to comments and conduct of a sexual nature from co-workers and supervisors, including but not limited to sexual advances, male co-workers urinating in her presence, and lewd behavior and sexual harassment on busses used to transport employees.

14. Plaintiff TIVNAN objected to the comments and conduct; however, it remained.

15. Plaintiff TIVNAN was demoted and eventually terminated because of her sex.

16. Defendant MANPOWER's worksite was a hostile work environment.

17. Plaintiff TIVNAN was discriminated against because of her sex as a female, subjected to a hostile work environment, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

## GENERAL ALLEGATIONS

18. Plaintiff TIVNAN hereby incorporates by reference each of the foregoing allegations as if fully stated herein.

19. Plaintiff TIVNAN worked in large part as a Quality Analysis/Quality Control Specialist in the Mirror/Module Assembly Building at Solana.

20. During approximately February of 2012, after confirming the availability of parts for assembling Parabolic Trough Modules and while Plaintiff TIVNAN was on break, her male supervisor came in to the break room and began slamming parts on the table in front of Plaintiff TIVNAN and tossed a bracket at Plaintiff TIVNAN after already berating Plaintiff TIVNAN in front of co-workers.

21. Had Plaintiff TIVNAN been a man, instead of a woman, the above actions of the supervisor would not have occurred.

22. Between February of 2012 and July of 2012, Plaintiff TIVNAN's same supervisor verbally harassed, emotionally harassed, and threatened her using profanity, vulgar language, was unprofessional, and relentlessly kept asking Plaintiff TIVNAN's age.

23. Plaintiff TIVNAN's supervisor threatened her that if she did not make a certain quota, then there would be "a walk to the gate" which meant termination.

24. Plaintiff TIVNAN attended meetings where an incentive would be provided that if a certain number of modules were made, then she would receive extra hours for pay; however, when the quota was reached Plaintiff TIVNAN did not receive the incentive money in her paycheck.

25. Employees fainted as a result of a lack of ventilation in the building and were threatened with losing their jobs if employees passed out.

26. Plaintiff TIVNAN's job was threatened on a daily basis as a means of intimidation, and conversations regarding firearms were regular.

27. The environment interred with Plaintiff TIVNAN's work, and her supervisor refused to approve her transfer or raise her pay.

28. During the summer of 2012, Plaintiff TIVNAN was sent to the field to coordinate the installation of schott tubes on Parabolic Mirrors, and her title was PTIS (Parabolic Trough Installation Specialist).

29. A male fork truck driver told Plaintiff TIVNAN that if he did not already have a girlfriend that he would "have" her.

30. After Plaintiff TIVNAN refused Defendant MANPOWER's employee's advances, the fork truck driver began to act reckless in his duties, lowering the boom down where it would be extremely difficult to hook the strap and then yank it up in the air quickly so as to pinch Plaintiff TIVNAN's fingers.

31. The same fork truck driver would stare a Plaintiff TIVNAN, urinate in her presence on more than one occasion, and demanded that Plaintiff TIVNAN get her "(expletive) lunch box off of his fork truck" while other male employees could leave their lunch boxes on the fork truck, requiring Plaintiff TIVNAN to put her lunch box on one of the manlifts.

32. Plaintiff TIVNAN filed a report with Defendant MANPOWER's Human Resources regarding the behavior; however, there was no disciplinary action taken for the behavior.

33. On two occasions, Defendant MANPOWER's Human Resources representatives came out in to the field to take notes explaining the fork truck driver's actions and unacceptable behavior towards Plaintiff TIVNAN.

34. During October of 2012 and November of 2012, the conduct continued.

35. In October of 2012, a male field supervisor while driving to the bus backed in to a manlift with approximately nine (9) employees on it, smashing the back window of the vehicle and damaging the back end.

36. The field supervisor did not lose his position, despite being a probationary employee, Plaintiff TIVNAN was not questioned or interviewed regarding the incident, and Plaintiff TIVNAN believed had the field supervisor been her, or any woman, who had damaged a piece of equipment in this manner, they would have been terminated.

37. The same field supervisor took off work on mandatory work days, such as Saturdays in November of 2012, with a male tent supervisor to play golf.

38. The field supervisor was new in the position, having only been employed by Defendant MANPOWER for a couple months prior.

39. Other male crew members would take off and not show up on a mandatory day and would never be written up or disciplined in their actions, all evidence of men in similar positions being treated more favorably.

40. On approximately November 17, 2012, Plaintiff TIVNAN was working and the field supervisor had taken the day off to play golf with the tent supervisor.

41. A male crew member attempted to usurp Plaintiff TIVNAN's order of installation of the tubes after Plaintiff TIVNAN had initially given the fork truck driver and manlift crews a list of the order in which the tubes would be installed.

42. The crew member began telling others to install another tube in another area of the site, began to become loud and adamant, and did not have any idea on how to organize the installation of the tubes along with the paperwork and tracking involved because of his lack of training or experience.

43. The fork truck and manlift crews began to get confused, as the crew member was disrupting production and creating a hostile work environment.

44. A fork truck driver recommended Plaintiff TIVNAN call a field superintendent as a result of the absence of the field supervisor and tent supervisor, Plaintiff TIVNAN called the field superintendent, he came out in to the field, and Plaintiff TIVNAN relayed the problem that was forming to the field superintendent who said he would take care of it.

45. On the morning of November 19, 2012, the formerly absent field supervisor drive up to Plaintiff TIVNAN in a four-wheeler and asked her to get in.

46. The field supervisor drove Plaintiff TIVNAN to Manpower Trailer 41 where the formerly absent tent supervisor, Defendant MANPOWER's Human Resources, and another man were present where the tent supervisor informed Plaintiff TIVNAN that she was not doing a good job in her current position.

47. Plaintiff TIVNAN informed the tent supervisor that she had not had any complaints, had not been written up, was not the only Quality Analysis/Quality Control Specialist in the field, and she requested some form of proof that there was a problem with her traceability reports.

48. The tent supervisor said they did not have any such proof, and Plaintiff TIVNAN realized this was related to the events of November 17, 2012.

49. The tent supervisor informed Plaintiff TIVNAN "there is too much animosity in the field", and she would either be demoted to a laborer status or go home.

50. Defendant MANPOWER Human Resources informed Plaintiff TIVNAN that her hourly wage would be lowered.

51. A few days later on November 27, 2012, Plaintiff TIVNAN was walking to Defendant MANPOWER's busses to go home at the end of the day when she was asked to go to Manpower Trailer 41.

52. Plaintiff TIVNAN asked whether she should go to the office the next day because the busses were already loaded, and she was informed "no, the busses will wait."

53. Plaintiff TIVNAN was informed in Manpower Trailer 41 that she was terminated.

54. Plaintiff TIVNAN asked for the reason she was being terminated and was told she had been hounding the field superintendent about her pay.

55. The only recent interaction Plaintiff TIVNAN had with the field superintendent was regarding his statement that he would get Plaintiff TIVNAN back in the field, and she asked him how that was progressing.

56. Defendant MANPOWER's stated reason for Plaintiff TIVNAN's termination was insubordination.

57. Plaintiff TIVNAN stated she was disputing the termination and was informed someone from Defendant MANPOWER would be contacting her, which never occurred.

58. Everyone on the bus was waiting for Plaintiff TIVNAN as she left Manpower Tent 41.

59. Plaintiff TIVNAN was replaced in the field by a male who lacked experience, wore headphones and listened to music in violation of policy, and was deficient in his performance but never disciplined.

60. Throughout Plaintiff TIVNAN's employment with Defendant MANPOWER, she experienced sex-based discrimination, a hostile work environment, and retaliation.

61. In August of 2012, Plaintiff TIVNAN was blamed for turning in a male crew member for smelling of alcohol on his breath; however, he worked in a manlift, Plaintiff TIVNAN worked on the ground, and she was not near him.

52. In August 2012 through November 2012, crew members would smoke marijuana in the manlifts, the bathrooms were kept in deplorable shape, and the busses transporting employees were full of lewd behavior and sexual harassment.

63. In approximately October 2012 or November of 2012, Plaintiff TIVNAN was blamed for the suspension of a male manlift crew member for not wearing his steel toed boots.

64. During the fall of 2012, Plaintiff TIVNAN accomplished the written, classroom portion of the certification card for manlift and scissorlift; however, she was not allowed to finish the certification while male employees were allowed to gain their cards, and the trainer for the class was the field superintendent.

65. Throughout Plaintiff TIVNAN's employment with Defendant MANPOWER, Plaintiff TIVNAN was made to pull a 40' trailer by hand with the tongue of the trailer through the field when it was supposed to be moved by either a tractor or four-wheeler with male crew members yelling "giddy up" and "mush" laughing, Plaintiff TIVNAN was knocked down while attempting to pull the trailer down the field which she reported, and Plaintiff TIVNAN was informed by a fork truck driver that four-wheelers were used by men.

66. Throughout Plaintiff TIVNAN's employment with Defendant MANPOWER, she was required to fill out Task Safety Analysis Forms daily to have her crew sign, even though this was a duty of a supervisor, and Plaintiff TIVNAN was threatened with unpaid time off if they were incomplete.

67. Plaintiff TIVNAN witnessed lewd pictures and profanity written on cardboard boxes of her female co-workers.

68. The above actions were based on Plaintiff TIVNAN's sex as a woman and were a result of her protected activity of complaints of harassment and discrimination made to her superiors.

69. Defendant MANPOWER created an environment filled with sex discrimination, a hostile work environment, and retaliation where men were treated completely differently than their women counterparts.

70. The mistreatment and discrimination was from superiors down to co-workers and eventually led to Plaintiff TIVNAN's demotion and termination.

71. No corrective actions were taken as a result of Plaintiff TIVNAN's complaints, and the difference in discipline from Defendant MANPOWER's superiors to Plaintiff TIVNAN and the male employees was glaring and overtly discriminatory.

72. Plaintiff TIVNAN was given conflicting reasons of performance and then insubordination for her eventual demotion and termination.

73. On approximately February 28, 2013, Plaintiff TIVNAN filed an Employment Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").

74. The Charge was assigned Charge No. 540-2013-01433.

75. On December 4, 2018, the EEOC issued a Determination.

76. The EEOC issued a Notice of Right to Sue (Conciliation Failure) on July 6, 2021 notifying Plaintiff TIVNAN of her right to file a lawsuit.

77. Plaintiff TIVNAN has exhausted her administrative remedies and has proceeded with a timely lawsuit.

78. Title VII makes it an unlawful employment practice for an employer to discriminate against any individual because of such individual's race, color, religion, sex, or national origin.  *See* 42 U.S.C. §  2000e-2(a).

79. This prohibition encompasses the creation of a hostile work environment, which violates Title VII's guarantee of the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

80. Additionally, Title VII makes it an unlawful employment practice for an employer to discriminate against any of its employees because an employee has opposed any practice made an unlawful employment practice or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.  *See* 42 U.S.C. §  2000e-3(a).

## FIRST CLAIM FOR RELIEF

### (DISCRIMINATION)

Violations of Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e *et seq.*

81. Plaintiff TIVNAN hereby incorporates by reference each of the foregoing allegations as if fully stated herein.

82. Plaintiff TIVNAN is a covered employee under Title VII as described above.

83. Defendant MANPOWER is a covered employer under Title VII as described above.

84. Plaintiff TIVNAN suffered adverse employment actions as described above.

85. Plaintiff TIVNAN suffered adverse employment actions as described above because of her gender as a female.

86. Defendant MANPOWER's conduct as described above was intentional.

87. Plaintiff TIVNAN has suffered damages in amounts to be proven at trial as a direct and proximate result of Defendant MANPOWER's intentional actions including but not limited to lost wages and other compensation, monetary loss sustained as a direct result of Defendant MANPOWER's actions, emotional harm, and harm to her reputation.

88. Plaintiff TIVNAN's attorneys' fees and costs should be paid by Defendant MANPOWER, and the Court should grant any other relief, equitable or otherwise, deemed proper.

## SECOND CLAIM FOR RELIEF

### (RETALIATION)

Violations of Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e *et seq.*

89. Plaintiff TIVNAN hereby incorporates by reference each of the foregoing allegations as if fully stated herein.

90. Plaintiff TIVNAN is a covered employee under Title VII as described above.

91. Defendant MANPOWER is a covered employer under Title VII as described above.

92. Plaintiff TIVNAN complained of discrimination to Defendant MANPOWER, which is a protected activity.

93. Defendant MANPOWER was aware of Plaintiff TIVNAN's protected activity.

94. Plaintiff TIVNAN suffered adverse employment actions, including but not limited to, the alteration of her job duties, demotion, and termination.

95. Plaintiff TIVNAN's protected activity of complaining of discrimination was the but-for cause of the alleged adverse employment actions taken by Defendant MANPOWER.

96. Defendant MANPOWER's alleged reasons for the adverse employment actions taken against Plaintiff TIVNAN are pretextual.

97. Defendant MANPOWER's conduct as described above was intentional.

98. Plaintiff TIVNAN has suffered damages in amounts to be proven at trial as a direct and proximate result of Defendant MANPOWER's intentional actions including but not limited to lost wages and other compensation, monetary loss sustained as a direct result of Defendant MANPOWER's actions, emotional harm, and harm to his reputation.

99. Plaintiff TIVNAN's attorneys' fees and costs should be paid by Defendant MANPOWER, and the Court should grant any other relief, equitable or otherwise, deemed proper.

### THIRD CLAIM FOR RELIEF

**(HOSTILE WORK ENVIRONMENT)**

Violations of Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e *et seq.*

100. Plaintiff TIVNAN hereby incorporates by reference each of the foregoing allegations as if fully stated herein.

101. Plaintiff TIVNAN is a covered employee under Title VII as described above.

102. Defendant MANPOWER is a covered employer under Title VII as described above.

103. Plaintiff TIVNAN was subjected to sexual advances, requests for sexual conduct, or other verbal or physical conduct of a sexual nature.

104. The conduct was unwelcome.

105. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff TIVNAN's employment and create a sexually abusive or hostile work environment.

106. Plaintiff TIVNAN perceived the working environment to be abusive or hostile.

107. A reasonable woman in the Plaintiff TIVNAN's circumstances would consider the working environment to be abusive or hostile.

108. Defendant MANPOWER's conduct as described above was intentional.

109. Plaintiff TIVNAN has suffered damages in amounts to be proven at trial as a direct and proximate result of Defendant MANPOWER's intentional actions including but not limited to lost wages and other compensation, monetary loss sustained as a direct result of Defendant MANPOWER's actions, emotional harm, and harm to her reputation.

110. Plaintiff TIVNAN's attorneys' fees and costs should be paid by Defendant MANPOWER, and the Court should grant any other relief, equitable or otherwise, deemed proper.

### DEMAND FOR JURY TRIAL

111. Plaintiff TIVNAN hereby requests a jury trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff TIVNAN prays for a judgment as follows:

A. For damages to make Plaintiff TIVNAN whole, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance benefits, training, promotions, reinstatement, and seniority;

B. For actual monetary losses sustained as a direct result of the violation;

C. For interest on the above amounts calculated at the prevailing rate;

D. For punitive damages as a result of the violation;

E. For reasonable attorneys' fees and costs incurred in this matter; and

F. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 4th day of October, 2021.

**FAITH, LEDYARD & FAITH, PLC**

By: */s/ Barry M. Aylstock*
      Barry M. Aylstock
      919 North Dysart Road, Suite F
      Avondale, Arizona 85323
      *Attorney for Plaintiff*